IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

EDUARDO ANTONIO CINTRA §
GONZALEZ, §
§
§
    Petitioner, §
§
v. § 1:26-CV-445-RP
§
§
CHARLOTTE COLLINS, *Warden of* §
*T. Don Hutto Detention Center*, et al., §
§
    Respondents. §

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Eduardo Antonio Cintra Gonzalez's ("Petitioner") Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on February 25, 2026. (Dkt. 1). On March

2, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three

days as to why the petition should not be granted. (Dkt. 3). On March 5, 2026, Respondents

Charlotte Collins, Warden, T. Don Hutto Detention Center; Todd M. Lyons, Acting Director of

United States Immigration and Customs Enforcement ("ICE"); Miguel Vergara, Director of San

Antonio Field Office, U.S. ICE; Markwayne Mullin, Secretary of the United States Department of

Homeland Security; and Todd Blanche, Acting United States Attorney General (together,

"Respondents")[1] filed a response in opposition, (Dkt. 5).[2] The Court then ordered Petitioner to file

more information to clarify allegations in his Petition. (Order, Dkt. 6). Petitioner filed a

Supplemental Letter Brief, (Dkt. 8), and Respondents filed a Supplemental Letter Brief, (Dkt. 11).[3]

---

[1] The Response is filed only on behalf of the federal employees in this action. (Resp., Dkt. 5, at 1 n.1).
[2] Markwayne Mullin and Todd Blanche are automatically substituted as Respondents pursuant to Federal Rule of Civil Procedure 25(d).
[3] The Court allowed Petitioner to reply to Respondents' Supplemental Letter Brief, but he did not do so. (Order, Dkt. 12).

Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner, a citizen of Cuba, is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 1). The facts pertaining to Petitioner's latest entry into the United States have been a subject of dispute. (*See* Dkts. 8, 11) (Petitioner and Respondents providing the Court with differing facts regarding Petitioner's latest entry into the United States). Petitioner alleges that he was granted a form of parole under the Migrant Protection Protocols ("MPP") on July 5, 2019, and that his last and final entry into the United States was on that date. (Dkt. 8, at 1).

Respondents contend that, however, that Petitioner was returned to Mexico on July 6, 2019, per the MPP. (Respondents' Supp. Br., Dkt. 11, at 1). According to Respondents,[4] Petitioner was again paroled into the United States for one day on September 23, 2019, to attend a master calendar hearing on the MPP docket, and he was then returned to Mexico; this occurred again in December 2019. (*Id.* at 2). In September 2020, Petitioner filed a motion to change venue indicating that he now lived in Miami, Florida.[5] (*Id.*). He also filed a Form I-589, Application for Asylum and for Withholding of Removal, which states that he lived in Mexico from May 2019 to June 2020 and has lived in the United States since June 2020. (Form I-589, Dkt. 11-4, at 2). Subsequently, according to Deportation Officer David A. Pulido, in February 2024 Petitioner "randomly reported to the San Antonio Residence Office, and [ICE Enforcement and Removal Operations] started having him to

---

[4] Respondents' allegations are supported by the Declaration of Deportation Officer David A. Pulido, (Dkt. 11-1).

[5] The immigration judge denied the motion to change venue given that there was "no evidence of admission or parole." (Imm. J. Order, Dkt. 11-5, at 2).

report."[6] (Pulido Decl., Dkt. 11-1, at 2). Based on the above allegations and supporting documentation, the Court will undertake its analysis based on the facts provided by Respondents.

On October 8, 2025, Petitioner attended a check-in at the ICE ERO San Antonio Field Office. (Pet., Dkt. 1, at 2). At that check-in he was detained and taken to T. Don Hutto Detention Center. (*Id.*). Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Resp., Dkt. 5, at 1, 7–13). Petitioner alleges that he is entitled to a writ because (1) he is being wrongfully detained without bond under the interpretation of the Immigration and Nationality Act's ("INA") mandatory and discretionary detention provisions that was adopted by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025); (2) his detention violates his right to due process under the Fifth Amendment; (3) Respondents should be barred from detaining him under the doctrine of judicial estoppel; and (4) Respondents' arrest and detention of Petitioner without a warrant or documented assessment of flight risk violates the Administrative Procedure Act ("APA"). (Pet., Dkt. 1, at 7, 14–17).

## II. DISCUSSION

### A.  Administrative Exhaustion

To the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion

---

[6] Though he does not state when he began reporting to the San Antonio Field Office, he alleges that he reported every six months. (Pet., Dkt. 1, at 2).

would be futile in light of *Matter of Yajure Hurtado*). By Respondents' own interpretation of 8 U.S.C. § 1225, (Dkt. 5, at 4), at Petitioner's exhaustion of administrative remedies would be futile.

### B. Petitioner's Petition for Writ of Habeas Corpus

This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who have been residing in the country for years, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g.*, *Guzman v. Bondi*, --- F. Supp. 3d ---, No. 1:25-CV-2055-RP, 2025 WL 3724465 (W.D. Tex. Dec. 23, 2025). This interpretation was recently rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. By contrast, it did not examine whether Petitioner's ongoing detention without access to a bond hearing violates the Constitution. *Id.*[7] As such, the Court turns to Petitioner's independent claim for release under the Due Process Clause.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Contrary to Respondents' argument, (Resp., Dkt. 5, at 18), "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, --- F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of

---

[7] Indeed, the Government's counsel stated during oral argument: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, *Buenrostro-Mendez v. Bondi*, No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("For these reasons, an alien in respondent's position has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added). Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the United States since 2020, including for approximately one and a half years with Respondents' apparent permission. (Respondents' Supp. Br., Dkt. 11, at 3) (stating that Petitioner has been periodically reporting to ERO in San Antonio since February 2024).[8] For constitutional purposes, Petitioner's time living in the United States—with the government's apparent permission— differentiates him from the petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."[9] *Id.*

---

[8] Moreover, Respondents have known that Petitioner was residing in the United States since September 2020. (*See* Pulido Decl., Dkt. 11-1, at 2) (declaring that Petitioner applied for asylum with the Immigration Court in September 2020 and stated on the form that he lives in Miami, Florida).

[9] *See also Mendoza v. Noem*, No. 5:26-CV-728-JKP (W.D. Tex. Feb. 26, 2026) (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)). ("Further, even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'").

Beyond their arguments based on *Thuraissigiam* and the "entry fiction," Respondents also argue that Petitioner cannot raise a valid procedural due process claim because the factors he wishes to raise at a bond hearing are not relevant under § 1225. (Resp., Dkt. 5, at 16–17) (first citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4–5, 7–8 (2003); and then citing *Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022) (per curiam). They relatedly argue that, because consideration of whether Petitioner is a flight risk or a danger to the community is not relevant under § 1225, Petitioner is instead making a substantive due process argument. (*Id.* at 20–22). Finally, Respondents assert that—even if Petitioner can assert a viable procedural due process claim—he has failed to do so. (*Id.* at 18–20) (first citing *Landon v. Plasencia*, 459 U.S. 21 (1982); and then citing *Kaplan v. Tod*, 267 U.S. 228 (1925)).

The Court finds none of these arguments to be persuasive. As to the first argument, the Court finds that *Doe* is highly distinguishable. In that case, the litigant was challenging the requirement for him to register as a sex offender without a hearing on the topic of whether he was "currently dangerous," though the statutory scheme at issue did not consider that factor. *Doe*, 538 U.S. at 4. The Supreme Court held that, because the determination sought by the litigant in such a hearing would have no bearing on the outcome, he had no procedural due process right to such a hearing. *Id.* at 7–8. The Court finds this reasoning to be inapplicable to this case for two reasons. For one, as a sister court in this District has already noted, *Doe* "arose in an entirely different context" than "an immigration detainee's challenge to their detention without a bond hearing." *Hernandez, v. ICE Field Off. Dir.*, No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026). Given that "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690, this Court similarly does not find that a case about registering as a sex offender is directly on point. Second, whether or not Petitioner is a flight risk or a danger *is* relevant to Petitioner's detention. Though Respondents frequently describe

6

detention under 8 U.S.C. § 1225(b) as "mandatory detention," noncitizens who are detained under

§ 1225(b) *may* be released on parole for "humanitarian reasons or significant public benefit," so long

as they "present neither a security risk nor a risk of absconding."[10] *See* 8 U.S.C. § 1182(d)(5)(A); 8

C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is in fact

not irrelevant, unlike in *Doe*.[11]

Second, Respondents' argument based on *Wekesa* is similarly unavailing. As a sister court in

this District has explained, the Fifth Circuit only "fleetingly noted that Wekesa raised a due process

challenge, [but] it did not address that argument or the facts underlying the case in its brief order,

and neither did the district court." *Lopez-Arevelo*, 801 F. Supp. 3d at 683. Moreover, *Wekesa* is an

unpublished opinion with no binding precedential value, and like the *Lopez-Arevelo* Court, this Court

finds it unpersuasive. *See id.* The Court makes this determination particularly due to the fact that

*Wekesa* involved a "due process challenge to prolonged, mandatory detention under § 1226," while

the instant case "challenges the decision to subject [Petitioner] to mandatory detention under

§ 1225(b) at all, without any process or individualized reasons, after he spent [over five] years" at

liberty within the United States. *See id.* at 683–84.

Lastly, regarding Respondents' arguments based on *Landon* and *Kaplan*, the Court finds that

both cases are inapposite. The Supreme Court's analysis in *Kaplan* focused on statutory construction,

and it related to whether she could "*be deported* upon a warrant issued more than five years after her

entry into the United States." *Kaplan*, 267 U.S. at 230 (holding that the noncitizen had "never . . .

---

[10] *See Aguilar v. Bondi*, 811 F. Supp. 3d 815, 820 n.1 (W.D. Tex. 2025) ("The Court recognizes that, while the phrase 'mandatory detention' is often used to describe detention under 8 U.S.C. § 1225(b), the phrase is somewhat of a misnomer, as courts have acknowledged that one detained under § 1225(b) may still obtain release through parole for 'urgent humanitarian reasons or significant public benefit.'").

[11] The Court also agrees with the reasoning of its sister court that the distinction between substantive and procedural due process in this context is not helpful, as "the two concepts are not mutually exclusive, and their protections often overlap." *See Valencia Reyes v. Noem*, 5:25-CV-1921-XR, at *9–10 (W.D. Tex. Feb. 25, 2026) (quoting *Albright v. Oliver*, 510 U.S. 266, 302 (1994) (Souter, J., concurring)).

been dwelling in the United States *within the meaning of the Act*" and stating that the two questions presented were whether the noncitizen became a citizen by the naturalization of her father and whether she could be deported five years after entering the country) (emphasis added). As to *Landon*, that case involved the due process rights of a noncitizen who was "*outside* the United States, seeking admission *into* the United States, based on established 'ties' to the country." *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, No. CV 25-10676-BEM, 2026 WL 521557, at *30 n.78 (D. Mass. Feb. 25, 2026) (citing *Landon*, 459 U.S. at 32–34) (emphasis in original). Thus, neither of these cases are relevant to the Court's analysis.

Because Petitioner validly makes a due process argument, the Court will address whether Petitioner has succeeded on his procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, "[b]ecause he spent [over five] at liberty in the United States, [Petitioner] possesses a cognizable interest in his freedom from detention." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 701 (W.D. Tex. 2025) (citations omitted). The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest

the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas, including this Court, have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g.*, *id.*; *Ochoa*, ---F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2–4; *Vieira*, 806 F. Supp. 3d at 701 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights."); *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5

(W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process"); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at \*10 (W.D. Tex. Oct. 21, 2025) (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at \*4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights."). Federal district courts in Texas have also made this finding subsequent to the Fifth Circuit issuing its opinion in *Buenrostro-Mendez*. *See, e.g.*, *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at \*2 & n.1 (W.D. Tex. Feb. 9, 2026) (holding that *Buenrostro-Mendez* "does not change this case's outcome on procedural due process grounds"); *Clemente Ceballos v. Garite*, No. EP-26-CV-00312-DB, 2026 WL 446509, at \*2 & n.2 (W.D. Tex. Feb. 10, 2026) (same); *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953 (W.D. Tex. Feb. 9, 2026) ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in *Buenrostro-Mendez* . . . *Buenrostro-Mendez* has no bearing on this Court's determination of whether [petitioner] is being detained in violation of [his] constitutional right to procedural due process."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, at \*7 (W.D. Tex. Feb. 26, 2026) (holding that *Buenrostro-Mendez* "only addresses a statutory claim" and "did not address and does not preclude consideration of constitutional and other claims"). This Court agrees with the Due Process Clause analysis in the above cases, and finding a constitutional violation, it need not reach the other issues briefed by the parties.

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar

situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, at *16–18 (W.D. Tex. Feb. 26, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025)) (explaining, after finding a due process violation, that release is the proper remedy rather than a bond hearing because "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."). The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner's immediate release.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner's counsel by email[12] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report **on or before April 17, 2026**, detailing their compliance with this Order.

**SIGNED** on April 15, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[12] Christopher Ulises Ramirez, christopher@bluebonnetlawfirmpc.com